FILED IN MY OFFICE
DISTRICT COURT CLERK
8/20/2015 4:55:10 PM
STEPHEN T. PACHECO
Ginger Sloan

**STATE OF NEW MEXICO**
**COUNTY OF RIO ARRIBA**
**FIRST JUDICIAL DISTRICT**

**JOHN TRUJILLO,**

                    **Plaintiff,**

**v.**                                                    No.:  D-117-CV-2015-00301

**RIO ARRIBA COUNTY ex. rel**
**RIO ARRIBA COUNTY SHERRIFF'S**
**DEPARTMENT, DEPUTY GILBERT**
**ATENCIO, in his individual capacity,**
**and LIEUTENANT MARVIN ARMIJO,**
**in his individual capacity,**

                    **Defendants.**

## COMPLAINT TO RECOVER DAMAGES PURSUANT TO THE NEW MEXICO TORT CLAIMS ACT AND FOR THE DEPRIVATION OF RIGHTS GUARANTEED BY THE NEW MEXICO CONSTITUTION

Plaintiff, John Trujillo, through counsel, Kennedy Kennedy & Ives, LLC, hereby brings

this complaint seeking damages pursuant to the New Mexico Tort Claims Act, NMSA 1978, §§

41-4-1 et seq. and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

### PARTIES

1.        Plaintiff John Edward Trujillo (hereinafter "Plaintiff") is an individual who is a resident

of Angel Fire, which is located in Colfax County, New Mexico.

2.        The Rio Arriba County Sherriff's Department is a municipal agency of the County of Rio

Arriba which maintains its primary physical office in the City of Española, which is located in

Rio Arriba County, New Mexico.

3.        At all material times Gilbert Atencio was employed as a deputy sheriff for the Rio Arriba

County Sherriff's Department and was acting under color of state law and in the course and scope

of his duties as a law enforcement officer with the State of New Mexico.

1

EXHIBIT A

4.      At all material times Marvin Armijo was employed as a Lieutenant for the Rio Arriba

County Sheriff's Department and was acting under color of state law and in the course and scope

of his duties as a law enforcement officer with the State of New Mexico.

## JURISDICTION AND VENUE

5.      The causes of action stated herein arise pursuant to the New Mexico Tort Claims Act.

6.      Upon information and belief, the defendants reside in Rio Arriba County, New Mexico.

7.      Jurisdiction and venue are proper in the First Judicial District Court of the State of New

Mexico pursuant to NMSA 1978, Section 41-4-18 and NMSA 1978, Section 38-3-1.

## FACTS

8.      Plaintiff, John Trujillo, is an honorably discharged veteran of the United States Army. He

served his country as an infantry officer in the Vietnam conflict.

9.      Plaintiff's service to this country has left him 100% disabled due to degenerative joint

disease in his knees, and nephropathy, end stage renal disease associated with diabetes mellitus.

10.     Plaintiff underwent surgery for cataracts related to his diabetes in November, 2014.

11.     Plaintiff was 68 years-old, 5'11" tall and approximately 240 lbs at all material times.

12.     Plaintiff had a handicap placard present and visible in his wife's vehicle, a red 2007 Mini

Cooper Convertible, at all material times.

13.     Other than the events described herein, Plaintiff has a spotless driving record.

14.     On August 22, 2013 Plaintiff had an appointment at the Albuquerque Veterans Affairs

Medical Center at 2:00 PM.

15.     Plaintiff left his home in Angel Fire, New Mexico, at approximately 9:00 AM and

proceeded to his appointment, making various stops along the way to eat and run errands.

16.     Around 12:51 PM Plaintiff arrived at the Veterans Affairs Hospital in Albuquerque.

17.     At approximately 3:24 PM Plaintiff left the Veterans Affairs hospital and ran additional errands in Albuquerque until approximately 4:00 PM, when he began to make his way back to Angel Fire.

18.     Plaintiff arrived at El Paragua restaurant, located at 603 Santa Cruz Rd., Española, NM 87532, at approximately 5:46 PM.

19.     Plaintiff consumed a chicken taco plate and two Dos XX ® Amber beers while at El Paragua.

20.     Plaintiff paid for his meal at 6:31 PM and left El Paragua, proceeding on his way home to Angel Fire, traveling along Highway 68 toward Taos, New Mexico.

21.     At approximately 7:00 PM Plaintiff encountered a DWI checkpoint and stopped in line, waiting to proceed through the checkpoint.

22.      Upon information and belief, Plaintiff was approached by Lt. Marvin Armijo of the Rio Arriba County Sheriff's Department on Highway 68 near mile marker 14.50 in Velarde, New Mexico.

23.     As a matter of courtesy and safety, Plaintiff retracted the top of his wife's Mini Cooper Convertible so that Lt. Armijo could see inside the car and so that it would be easier to converse.

24.     Lt. Armijo asked Plaintiff if he had consumed any alcohol within the past few hours.

25.     Plaintiff informed Lt. Armijo that he had two beers with his dinner.

26.     Lt. Armijo instructed Plaintiff to pull over to the side of the road.

27.     Plaintiff, who had no concerns that he would be deemed intoxicated, pulled his car over as instructed.

28.     Deputy Gilbert Atencio approached Plaintiff's car.

29.     Deputy Atencio noted a breath mint in Plaintiff's mouth.

30.     Deputy Atencio asked Plaintiff where he had consumed alcohol.

31.     Plaintiff told Deputy Atencio of his dinner at El Paragua.

32.     Deputy Atencio asked Plaintiff what brand of beer he had consumed.

33.     Plaintiff responded "Dos XX."

34.     Deputy Atencio asked Plaintiff if his beer was served in a bottle or a glass.

35.     Plaintiff responded that his beer was served in a bottle.

36.     Deputy Atencio asked Plaintiff to get out of his wife's car.

37.     Deputy Atencio noted that Plaintiff was "unsteady on his feet" and that he needed to hold

onto his door for balance.

38.     Plaintiff asked Deputy Atencio if he could retrieve his walking cane from the trunk of his

car.

39.     Plaintiff's Handicap Placard was plainly visible on the dash of his car.

40.     Deputy Atencio told Plaintiff to step away from the car.

41.     Deputy Atencio noted that Plaintiff "immediately began losing his footing."

42.     Plaintiff again asked if he could retrieve his walking cane from his car.

43.     Deputy Atencio again denied Plaintiff the opportunity to retrieve his cane.

44.     Plaintiff repeatedly attempted to explain to Deputy Atencio that he had physical

disabilities and offered to produce his Handicap Placard to prove his physical limitations.

45.     Deputy Atencio ignored Plaintiff.

46.     Deputy Atencio again asked Plaintiff how many beers he had consumed.

47.     Plaintiff again responded that he had consumed two beers with dinner.

48.     Deputy Atencio instructed Plaintiff to blow into a small handheld PBT (Preliminary

Breath Test) until Plaintiff heard a "beep."

49.     Plaintiff began to blow into the PBT but Deputy Atencio pulled it away from him before Plaintiff heard a "beep."

50.     Deputy Atencio did not show the PBT results to Plaintiff or any other officer present at the checkpoint.

51.     Deputy Atencio discarded the tube that Plaintiff had blown into and informed Plaintiff that he had a breath alcohol level of 0.12.

52.     Upon information and belief, Deputy Atencio did not preserve Plaintiff's PBT results.

53.     Upon information and belief, Deputy Atencio lied about Plaintiff's PBT results.

54.     Plaintiff immediately disputed the results and asked for an alternative breath test or that an independent blood test be performed.

55.     There was a large breathalyzer van present at the checkpoint; Deputy Atencio did not have Plaintiff re-tested using the technology in the van.

56.     Deputy Atencio attempted to have Plaintiff perform field sobriety tests.

57.     Deputy Atencio had Plaintiff stand with his feet together to do the horizontal and vertical gaze nystagmus test.

58.     Deputy Atencio observed no nystagmus in the resting stage of the test.

59.     Deputy Atencio observed equal tracking in both eyes as they moved from left to right.

60.     Deputy Atencio observed lack of smooth pursuit in both eyes as they moved from left to right.

61.     Deputy Atencio observed "distinct and sustained nystagmus at maximum deviation" and prior to 45 degrees.

62.     Deputy Atencio observed no vertical nystagmus.

63.     Deputy Atencio instructed Plaintiff to perform the "walk and turn" test.

64.    Deputy Atencio noted that Plaintiff had difficulty standing in the instructional phase of the "walk and turn" test.

65.    Deputy Atencio noted that Plaintiff used his arms for balance and could not remain in the instructional stance.

66.    Plaintiff again informed Deputy Atencio that he has knee problems.

67.    Deputy Atencio required Plaintiff to walk forward and back so as to observe his walking and purportedly observed nothing that would prevent him from walking or standing.

68.    Deputy Atencio refused to allow Plaintiff to retrieve his walking cane.

69.    Plaintiff almost fell over while attempting to complete the test.

70.    Deputy Atencio determined that it would be too dangerous to have Plaintiff continue the test.

71.    Deputy Atencio required Plaintiff to perform the finger dexterity test.

72.    Plaintiff is missing his right thumb.

73.    Plaintiff did not perform the finger dexterity test to Deputy Atencio's satisfaction.

74.    Deputy Atencio required Plaintiff to recite the alphabet from the letter H to S.

75.    Plaintiff had no problem reciting the alphabet as instructed.

76.    Deputy Atencio noted that Plaintiff was sweating and claims that Plaintiff slurred his words and had a flushed face.

77.    Deputy Atencio determined that Plaintiff would be arrested for driving under the influence of alcohol.

78.    Deputy Atencio placed Plaintiff in handcuffs.

79.    Other officers on the scene used Plaintiff's phone to call his friend, Michael Romero, and arranged for him to pick up Plaintiff's vehicle.

80.    Plaintiff was placed in Deputy Atencio's squad car.

81.    Plaintiff called his daughter, Attorney April White, and informed her that he was being arrested.

82.    Deputy Atencio took Plaintiff to Española Hospital for blood testing.

83.    En route to the Hospital Deputy Atencio drove like a crazy person.

84.    Medical staff informed Deputy Atencio that Plaintiff would not be medically cleared for incarceration due to the seriousness of his medical problems; specifically, because he has a port in his abdomen for Peritoneal Dialysis, which Plaintiff performs at home each night.

85.    Deputy Atencio informed Plaintiff that if he had so many medical problems then he should not be operating a motor vehicle while impaired by alcohol.

86.    Deputy Atencio had Plaintiff's blood drawn for a blood test.

87.    Plaintiff requested an additional draw for an independent blood test.

88.    Deputy Atencio denied Plaintiff the opportunity to submit to an additional blood draw for the independent blood test.

89.    Deputy Atencio charged Plaintiff with driving under the influence of alcohol and engaged proceedings to have Plaintiff's driver's license revoked.

90.    Deputy Atencio held Plaintiff at the Rio Arriba County Sherriff's office.

91.    Deputy Atencio instructed the deputies at the office to keep Plaintiff in handcuffs from the time he was arrested, at approximately 7:16 PM, until his daughter, Attorney White, paid his bail, around midnight.

92.    Throughout the encounter Plaintiff was only allowed out of handcuffs once, to sign paperwork related to his arrest which he could not read.

93.    When he was allowed out of handcuffs to sign the paperwork, Deputy Atencio ridiculed

Plaintiff for not having his reading glasses with him.

94.    At some point Deputy Atencio permitted Plaintiff to be brought back to Española

Hospital for an independent blood draw.

95.    Upon information and belief, Deputy Atencio delayed Plaintiff's independent draw so

that it would be beyond the allotted time for taking a sample and would be invalid as evidence.

96.    Plaintiff's daughter, Attorney White, arrived at the Sherriff's Office and was informed

that Plaintiff's bail would cost $3,005.00 and would only be accepted in the form of a money

order.

97.    Attorney White was told that if she was unable to procure her father's bail then he would

be booked into the Rio Arriba County Detention Center in Tierra Amarilla, his medical issues

notwithstanding.

98.    Attorney White drove around Española to procure the required bail and bailed Plaintiff

out around midnight.

99.    When the results of Plaintiff's two blood tests were made available they indicated that he

had no alcohol in his system.

100.    Despite the fact that Plaintiff's blood tests were negative for alcohol, Deputy Atencio

continued to pursue charges against him and to have his license revoked.

101.    Deputy Atencio objected to Plaintiff having his wife with him at the Motor Vehicle

Division license revocation hearing without cause to do so.

102.    Deputy Atencio was unable to produce Plaintiff's blood test results for the Motor Vehicle

Division hearing officer and proceedings to revoke Plaintiff's license were terminated.

103.    On January 14, 2014, Plaintiff's charges were nolle prosequi'd by the First Judicial

District Attorney's Office because he "demonstrated proof of his disability." Plaintiff's charges

were thereby dismissed with prejudice. See M-43-DR-201300206.

104.    No supervisory officer, including Lt. Armijo, ever intervened to protect Plaintiff's rights or correct Deputy Atencio's actions.

105.    Upon information and belief, no video record of Plaintiff's arrest was maintained by Defendants.

106.    Plaintiff, through counsel, served a Tort Claims Notice upon the Rio Arriba County's Sherriff's Department, Deputy Gilbert Atencio, the Rio Arriba County Clerk, the Rio Arriba County Risk Management Division, and the Rio Arriba County Manager on August 28, 2013.

107.    Plaintiff's health issues require him to travel to Albuquerque on a regular basis. Because of his encounter with Deputy Atencio, Plaintiff now no longer travels through Española, but instead travels 30 miles out of his way and proceeds through Las Vegas to avoid future encounters with Deputy Atencio and the Rio Arriba County Sheriff's Department.

## COUNT I - FALSE IMPRISONMENT

108.    Plaintiff incorporates his previous allegations as if stated herein.

109.    Deputy Atencio intentionally restrained Plaintiff within the bounded areas of his squad car, the Española Hospital, and the Rio Arriba County Sheriff's Office without Plaintiff's consent.

110.    Plaintiff was conscious of his confinement.

111.    Deputy Atencio's imprisonment of Plaintiff was undertaken without lawful cause.

112.    Deputy Atencio's imprisonment of Plaintiff has caused him to suffer compensable damages in the form of bodily injury and emotional distress.

113.    Deputy Atencio's imprisonment of Plaintiff was malicious, willful, reckless, wanton, fraudulent or undertaken in bad faith and Plaintiff is entitled to punitive damages against him.

9

## COUNT II - FALSE ARREST

114.    Plaintiff incorporates his previous allegations as if stated herein.

115.    Deputy Atencio arrested Plaintiff without probable cause.

116.    Deputy Atencio's arrest of Plaintiff was undertaken without lawful cause and served no legitimate governmental interest.

117.    Deputy Atencio's arrest of Plaintiff has caused him to suffer compensable damages in the form of bodily injury and emotional distress.

118.    Deputy Atencio's arrest of Plaintiff was malicious, willful, reckless, wanton, fraudulent or undertaken in bad faith and Plaintiff is entitled to punitive damages against him.

## COUNT III – MALICIOUS ABUSE OF PROCESS

119.    Plaintiff incorporates his previous allegations as if stated herein.

120.    Deputy Atencio misused the criminal process by filing charges against Plaintiff without a reasonable belief that Plaintiff committed a crime.

121.    Deputy Atencio's primary motive in filing charges against Plaintiff was to accomplish an illegitimate end.

122.    Deputy Atencio's charging of Plaintiff with driving while intoxicated was undertaken without lawful cause.

123.    Deputy Atencio's charging of Plaintiff has caused him to suffer compensable damages in the form of bodily injury, loss of reputation, and emotional distress.

124.    Deputy Atencio's charging of Plaintiff was malicious, willful, reckless, wanton, fraudulent or undertaken in bad faith and Plaintiff is entitled to punitive damages against him.

## COUNT IV –VIOLATION OF TITLE II OF THE
## AMERICANS WITH DISABILITIES ACT

125.    Plaintiff incorporates his previous allegations as if stated herein.

10

126.    Title II of the Americans with Disabilities Act forbids individuals, such as Defendant Rio Arriba County, from discriminating against qualified individuals, such as Plaintiff, on the basis of their disabilities.

127.    Defendant Rio Arriba County is a public entity as defined by the Americans with Disabilities Act, 42 U.S.C. § 12131(1)(B) (1990).

128.    Defendant Rio Arriba County does not have sovereign immunity for claims arising under the Americans with Disabilities Act. 42 U.S.C. § 12202 (1990).

129.    Plaintiff was a qualified individual with a disability as defined by the Americans with Disabilities Act, 42 U.S.C. § 12131(2) (1990).

130.    On the basis of his disability, Plaintiff was denied the benefits of services, programs, and activities of the Department of Public Safety, including but not limited to the benefits of:

    a.   encounters with officers properly trained to deal with citizens who suffer from service-related disabilities.

    b.   being treated with dignity by the government entity sworn to protect its community's citizens.

131.    Deputy Atencio wrongfully arrested Plaintiff when he misperceived the effects of Plaintiff's disability as criminal activity, namely, intoxication.

132.    On the basis of his disability, Defendants discriminated against Plaintiff by arresting Plaintiff for the manifestations of his disability.

133.    Defendants failed to provide adequate accommodations for disabled persons such as Plaintiff while conducting field sobriety tests.

134.    Defendants failed to provide adequate accommodations when they placed Plaintiff in jail and kept him handcuffed for a period of over four hours.

135.    Because of Plaintiff's physical disabilities, the handcuffing of Plaintiff caused more pain and discomfort than would occur to a person without a disability.

136.    Defendants violated Title II of the Americans with Disabilities Act when they

discriminated against Plaintiff and when they failed to provide adequate accommodations to

Plaintiff.

137.    As a result of Defendants' conduct, Plaintiff suffered damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

    I.      Actual and compensatory damages sufficient to make Plaintiff whole;

    II.      Attorneys' fees, litigation expenses, costs, pre- and post-judgment interest

        as provided by law; and

    III.      Such other and further relief as the Court deems just and proper.


Respectfully submitted,


KENNEDY KENNEDY & IVES, LLC


**_/s/ Joseph P. Kennedy_**
Joseph P. Kennedy
*Attorney for Plaintiff*
1000 Second Street NW
Albuquerque, New Mexico 87102
(505) 244-1400; fax (505) 244-1406