IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN TRUJILLO,

    Plaintiff,

vs.                                        Cause No. 15-CV-00901 JB-WPL

RIO ARRIBA COUNTY ex rel,
RIO ARRIBA COUNTY SHERIFF'S
DEPARTMENT, DEPUTY GILBERT ATENCIO,
in his individual capacity, and
LIEUTENANT MARVIN ARMIJO,
in his individual capacity,

    Defendant.

## MOTION FOR QUALIFIED IMMUNITY AND SUMMARY JUDGMENT

**COME NOW** Rio Arriba County, Rio Arriba County Sheriff's Department, Deputy Gilbert Atencio, and Lieutenant Marvin Armijo (Rio Arriba County Defendants), by and though their counsel of record Brennan & Sullivan, PA, and submit this Motion for Qualified Immunity and Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a). Plaintiff's attorney has been contacted and, as of the date of filing has not responded, so Plaintiff is presumed to oppose this motion. In support of this motion Defendants state Plaintiff's False Imprisonment (Count I), False Arrest (Count II), and Malicious Abuse of Process Count III) fail because Defendant Atencio had probable cause to arrest Plaintiff. Plaintiff's Violation of Title II of the Americans with Disabilities Act (ADA) claim (Count IV) fails because there was probable cause for the arrest and because Plaintiff never asked for an accommodation. Additionally, Defendants Armijo and Atencio are entitled to qualified immunity for the ADA claims because they did not violate

1

the ADA and it is not clearly established that the ADA applied to Plaintiff's arrest. In further support of this Motion, Defendants state as follows:

## I. INTRODUCTION

This case arises out of the alleged wrongful arrest of Plaintiff John Trujillo on August 22, 2013 for driving under the influence (DUI). Defendant Armijo was the first officer to encounter Plaintiff at the DUI roadblock; Plaintiff admitted to drinking beer. Plaintiff was then given further sobriety testing.

Defendant Atencio administered a preliminary breath test and informed Plaintiff that the preliminary test showed he had a breath alcohol concentration greater than the legal limit. Comp. ¶ 51; NMSA 1978 § 66-8-102(B). Plaintiff Trujillo failed other field sobriety tests, such as the the horizontal eye nystagmus (eye gaze) test and the finger dexterity test. Plaintiff, who had demonstrated an ability to walk, was nevertheless unable to safely stand during the instructional phase of the walk and turn test. This test was stopped for Plaintiff's safety. Defendant Atencio noted that Plaintiff was sweating, that he had slurred speech, and a flushed face.

Having determined he had probable cause to arrest Plaintiff for driving while impaired to the slightest degree, Defendant Atencio arrested Plaintiff. Plaintiff was handcuffed and driven to Espanola Hospital for a blood test. The hospital emergency department took Plaintiff's blood sample. The hospital emergency department did not clear Plaintiff for incarceration because he had to perform nightly dialysis which the jail would not be able to accommodate. Defendant Atencio then took Plaintiff to the Sheriff's department to await bond for release. Plaintiff was released from custody around midnight. At the time of release, Plaintiff was given a citation and a notice of driver's license revocation. The First Judicial District Attorney's office ultimately dropped the criminal charges against Plaintiff. The New Mexico Department of Taxation and

Revenue Motor Vehicle Division made no finding because the results of the blood test were not available at the time of the hearing.

The results of the blood test came several days after the hearing. The state test was negative for blood alcohol but positive for diazepam (Valium) and its metabolite, nordiazepam. Diazepam/nordiazepam is a central nervous system depressant. When combined with "low concentrations of alcohol," diazepam will significantly increase impairment of the skills required to drive safely. **Ex. A**.

In this litigation, Plaintiff Trujillo claims Defendant Atencio arrested him without probable cause to arrest. Comp. ¶¶ 115, 131. Plaintiff Trujillo asserts he is 100% disabled due to a combination of degenerative joint disease and kidney disease and failure. Comp. ¶ 9. Due to this alleged disability, Plaintiff Trujillo asserts defendants violated Title II of the Americans with Disabilities Act (ADA) by arresting Plaintiff for the manifestations of his disability, for failing to provide reasonable accommodations in while conducting field sobriety tests, and for keeping him handcuffed for 4 hours (Count IV). Plaintiff's tort claims of false imprisonment (Count I), false arrest (Count II), and malicious abuse of process (Count III) are predicated on the unlawfulness of the arrest.

Plaintiff's claims fail because the undisputed facts show that Defendant Atencio had probable cause to arrest Plaintiff. Because there was probable cause to arrest, Plaintiff's false imprisonment and false arrest claims fail. Plaintiff's malicious abuse of process claims fail because of the probable cause and because Plaintiff cannot show a malicious abuse of process claim under a theory of prosecutory impropriety. Defendant Rio Arriba County and Rio Arriba County Sheriff's office assert that the claims made against them fail because Plaintiff's arrest was based on probable cause and not a misapprehension of Plaintiff's disability. Moreover,

Plaintiff never asked for an accommodation for his handcuffs. Defendants Armijo and Atencio also assert they are entitled to qualified immunity for the ADA claim.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts are admitted for the limited purpose of this motion:

1. A single dose of diazepam can reduce a driver's reaction times, ability to perform multiple tasks, adversely affects memory and cognition, increases fatigue, and decreases the ability of the driver to remain in his lane. **Ex. A.1 and A.2**, Pl.'s Expert, Commander Murray A. Conrad, Report, *citing* U.S. Department of Transportation, National Highway Traffic Safety Administration, Drugs and Human Performance Fact Sheets, 31 (2014), http://www.nhtsa.gov/staticfiles/nti/pdf/809725-DrugsHumanPerformFS.pdf.

2. Diazepam, when combined with low concentrations of alcohol, increases impairment. *Id.*

3. Diazepam will cause the same effects as alcohol in the body and "can make the effects of alcohol seem worse than they are." **Ex. B**, Conrad Dep., 52:12-18, May 2, 2016.

4. Defendant Rio Arriba County Sheriff's Department was conducting a DUI Roadblock on August 22, 2013 on Highway 68 near mile marker 14.50 in Velarde, New Mexico. Compl. ¶¶ 21, 22.

5. Plaintiff, Mr. John Trujillo, encountered the DUI Roadblock at approximately 7:00 pm. Compl. ¶ 21.

6. Plaintiff, upon first encountering Defendant Armijo, admitted to drinking two beers within the past few hours. Compl. ¶¶ 24, 25.

7. Plaintiff was then directed to a separate staging area where he was directed to complete a series of DUI field sobriety tests. Compl. ¶ 26.

8. Plaintiff's preliminary blood alcohol test results (portable breathalyzer) showed he had a blood alcohol in excess of the legal limit of .08. Compl. ¶ 51.

9. Plaintiff failed the horizontal gaze nystagmus test (eye gaze test). Compl. ¶ 61; Ex. B, Conrad Dep. 40:10-19.

10. The reliability of the eye gaze test is "considerably" greater than 77% accurate at predicting intoxication. Ex. B, Conrad Dep. 45:19-23.

11. Plaintiff is missing his right thumb. Compl. ¶ 72.

12. Plaintiff performed the finger dexterity test with both hands. **Ex. C**, Trujillo Dep. 49:5-16, May 5, 2016.

13. Plaintiff failed the finger dexterity test. **Ex. D**, Statement of Probable Cause.

14. Defendant Armijo also observed an odor of alcohol and that Plaintiff had bloodshot eyes. **Ex. E,** State of New Mexico, Taxation & Revenue Department, Notice of Revocation No. 11731890, *and see* **Ex. F**, DUI Citation.

15. Plaintiff was arrested at approximately 7:16 pm. Comp. ¶ 91.

16. Plaintiff's arrest was for driving "while impaired to the slightest degree." Ex. D.

17. As a courtesy to Plaintiff and for his comfort, he was handcuffed with his hands in the front of his body. Ex. C., Trujillo Dep. 52: 2-5, 57:23-25, 60:21-24.

18. Plaintiff "appreciate[d the] consideration" Officer Atencio showed him by placing the handcuffs in the front of his body. *Id.* at 52:2-5.

19. Plaintiff was taken to Espanola Hospital to test his blood for alcohol. Compl. ¶ 82

20. Plaintiff was not incarcerated but rather was held at the Sheriff's office temporary

detention area until he was released on bond around midnight. Comp. ¶ 84, 90, 91.

21. Plaintiff never asked Defendant Atencio to remove or loosen his handcuffs. Ex. C at 54:2-5, 10-4; 55:11-13; 56:3-8; 59:11-14; 60:11-17, 20-24.

22. Plaintiff never asked any other Rio Arriba County official to remove or loosen his handcuffs. *Id.*; *Id.* at 61:12-14; 62:5-17; 63:12-14.

23. At the time of release, Plaintiff was provided a State of New Mexico Taxation and Revenue Department Motor Vehicle Division, Notice of [Driver's License] Revocation pursuant to NMSA 1978, §66-8-111. Ex. E; *see also* Ex. G, MVD revocation hearing at 03:25.

24. Plaintiff's driver's license revocation hearing was held on November 5, 2013 or within the statutory ninety-day period. Ex. G at 00:14; *see also* NMSA 1978, § 66-8-112(C).

25. At the time of the hearing, the results of the state blood alcohol test were unavailable and the hearing officer was unable to "find one way or the other, under the Implied Consent Act, whether there was a violation." Ex. G at 04:44; NMSA 1978, §§ 66-8-105 to -112.

26. The results of the state toxicology test were not mailed to Defendants until November 25, 2013. **Ex. H**.

27. Plaintiff's blood test showed he had diazepam and and its metabolite, noridazepam in his system. Ex. H.

28. Plaintiff is disabled due to degenerative joint disease, kidney disease, diabetes, and nephropathy. Compl. ¶ 9.

29. The First Judicial District Attorney's office prosecuted the case until Plaintiff's criminal case was dismissed on January 14, 2014. Comp. ¶ 103.

### III. MEMORANDUM OF LAW AND POINTS OF AUTHORITY

#### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(a). The moving party "bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (*citing to Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986)). Then the burden shifts to the opposing party to the motion who "must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (*citing to Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991)). In this case, the undisputed facts show that Plaintiff was arrested based on probable cause of driving under the influence, the probable cause was determined on neutral factors that are unrelated to Plaintiff's alleged disabilities, and Plaintiff never asked for an accommodation under the ADA.

#### B. New Mexico DUI Law and Probable Cause to Arrest for DUI

It is against the law for a person who is under the influence of intoxicating liquor or any drug to a degree that renders the person incapable of safely driving a vehicle to operate a motor vehicle within the state. NMSA 1978, § 66-8-102(A) and (B) (2013). By the plain language of the statute, New Mexico recognizes the unlawfulness of driving under even the "slight" influence of alcohol. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (*citing to State v. Sisneros*, 1938-NMSC-049, ¶ 18, 42 N.M. 500). By law, it is prohibited for a driver to be "less able to the

slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to [the driver] and the public." *State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446, cert. denied, 131 N.M. 382, 37 P.3d 99, 2001 (*quoting* UJI 14-4501 NMRA 2001).

To make an arrest for driving while under the influence of alcohol in New Mexico, "an officer does not have to observe a suspect actually driving in an impaired manner if the officer, based upon all the facts and circumstances, has reasonable grounds to believe that the suspect had been driving while intoxicated." *State v. Sanchez*, 2001-NMCA-109, ¶ 6,131 N.M. 355, 36 P.3d 446, cert. denied, 131 N.M. 382, 37 P.3d 99.

### C. DUI Checkpoints in New Mexico

A brief seizure at sobriety checkpoint is reasonable if conducted in a neutral manner. *Vondrak*, 535 F.3d at 1206, *citing to United States v. Galindo-Gonzalez,* 142 F.3d 1217, 1221 (10th Cir. 1998). In order to detain a driver to conduct a field sobriety check, reasonable suspicion is required. *Id.* (*citing to Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007). To arrest a driver for DUI, probable cause is required. *See State v. Sanchez*, 2001-NMCA-109, ¶ 7, 131 N.M. 355, 36 P.3d 446, cert. denied, 131 N.M. 382, 37 P.3d 99, 2001. Probable cause to arrest is based upon all the facts and circumstances and will be upheld if a reasonable officer in the same or similar circumstances would have had grounds to believe that the suspect had been driving while intoxicated. *Sanchez*, 2001-NMCA-109, ¶ 6 (internal quotations omitted).

### D. ADA and Arrest

The U.S. Supreme Court has declined to rule as to whether the ADA applies to arrests and whether public entities can be held liable for damages under Title II of the ADA for an arrest

made by its police officers. *City & Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1773-1774 (2015).

Federal district courts have recognized Title II ADA claims arising from two theories: (1) that the officer wrongly arrested someone based on the misapprehension of the effects of the disability as criminal conduct, and (2) that the police failed to provide reasonable accommodations to the person with disability during the investigation or arrest of an individual who was otherwise lawfully arrested. *Gohier v. Enright*, 186 F.3d 1216, 1220-1221 (10th Cir. 1999) (citation omitted). An arrest based on probable cause and a failure to ask for accommodations for disability may invalidate ADA arrest claims. *J.H. v. Bernalillo County*, 806 F. 3d 1255, 1261.

### IV. ARGUMENT

#### A. Defendants Atencio and Armijo are entitled to qualified immunity because Plaintiff cannot satisfy either prong of the qualified immunity test.

The qualified immunity doctrine applies to public officials acting in their individual capacities. *Brandon v. Holt*, 469 U.S. 464, 472-73 (1985). Qualified immunity has been recognized as a defense for ADA and Rehabilitation Act claims. *Roberts v. City of Omaha*, 723 F.3d 966 (8th Cir. 2013) (citation omitted); *see also Torcasio v. Murray*, 57 F.3d 1340 (4th Cir. 1995). Public officials are cloaked in immunity from suit unless they have "violated *a statutory or constitutional right that was clearly established at the time of the challenged conduct. City & Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015) (internal citation omitted) (emphasis added). A right is not clearly established unless the "'right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' [] meaning that 'existing precedent…placed the statutory or constitutional question beyond debate." *Id.* (*citing to Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011)). Where a defendant

has asserted qualified immunity, a plaintiff seeking to overcome the defense, "must satisfy a heavy two-part burden by showing: the defendant violated a constitutional or statutory right, and the right was "clearly established" at the time of the conduct in question. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). If the plaintiff fails to carry either part of the two part burden, the defendant is entitled to qualified immunity. *Albright v. Rodriquez*, 51 F.3d 1531, 1535 (10th Cir. 1995). The court may evaluate either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Plaintiff claims he was discriminated against on the basis of his disability during his arrest and detention in violation of the ADA. Thus, in order to satisfy the two part burden, Plaintiff must demonstrate his statutory rights under the ADA were violated and the right was clearly established on August 22, 2013. Plaintiff can satisfy neither prong and therefore Defendants Armijo and Atencio are entitled to qualified immunity.

   i.   **Plaintiff's ADA Rights during arrest and detention were not violated.**

Plaintiff claims he was discriminated against on the basis of his disability in three different ways. First, Plaintiff claims he was arrested based on Defendant Atencio's misperception of Plaintiff's disability as intoxication. Second, he claims Defendant Atencio failed to provide adequate accommodations while conducting the field sobriety tests. Third, he claims Defendants failed to provide adequate accommodation when Defendant Atencio handcuffed Plaintiff and when Plaintiff was detained Plaintiff at the Sheriff's Office. Comp. ¶¶ 132-134. None of Plaintiff's novel theories survives qualified immunity analysis and each are addressed below.

Regarding Plaintiff's first theory of a violation of the ADA, Defendant Atencio did not misperceive Plaintiff's disability as intoxication; rather, Defendant Atencio perceived neutral

indicia of driving under the influence. In other words, Plaintiff was arrested based on the probable cause that he was intoxicated. Defendant Atencio's probable cause was based on his observations that:

a. Plaintiff admitted to having two beers shortly before encountering the DUI Checkpoint,

b. the portable breathalyzer revealed Plaintiff had a blood alcohol level greater than .08,

c. Defendant Atencio smelled alcohol on Plaintiff,

d. Plaintiff had bloodshot eyes,

e. Plaintiff failed the finger dexterity test, and

f. Plaintiff failed the eye gaze test, which is over 77% reliable at predicting intoxication.

A comparison of these indicia to the evidence of driving under the influence presented in *State v. Sanchez*, 2001-NMCA-109, ¶ 9 demonstrates that, as a matter of law, Defendant Atencio had probable cause to arrest Plaintiff. In *Sanchez*, the New Mexico Court of Appeals reasoned the officer had probable cause to arrest based on the driver's admission to drinking two beers earlier in the evening, the smell of alcohol, the driver's bloodshot and watery eyes, and the driver's refusal to perform the field sobriety test which reasonably implied the driver was guilty of driving under the influence. *Id*. The driver in *Sanchez* attempted to rebut the inference that he was intoxicated with evidence of a leg brace and argued that "the officer should have known there was a plausible explanation, other than consciousness of guilt, for [the driver's] refusal to perform the field sobriety testing." *Id.* ¶ 10. In Sanchez, the Court rejected Plaintiff's argument and held that the driver's refusal to perform the field sobriety tests, combined with the other indications of intoxication, was enough to provide probable cause.

The evidence here is virtually identical to the evidence presented in *Sanchez*, both drivers admitted to having two beers, both had bloodshot eyes, and both smelled of alcohol. Here,

Defendant Atencio had the results of the portable breathalyzer, the finger dexterity test, and perhaps most importantly, the results of the failed eye gaze test to support decision to arrest Plaintiff. In other words, Defendant Atencio had even more facts to support probable cause than were required in *Sanchez*. Thus, the totality of the circumstances was sufficient under New Mexico jurisprudence to arrest Plaintiff for DUI, regardless of Plaintiff's alleged medical reasons/disabilities.

Defendant's suspicions were, in fact, born out by the blood tests results. Plaintiff had impairment drugs (diazepam) in his system. (Fact No. 27). The effects of diazepam are worsened when combined with alcohol. (Fact No. 2). Plaintiff's expert also attests to the fact that the diazepam found in Plaintiff's blood can impair a driver's ability operate a car safely. (Fact No. 3). Thus, not only did Defendant have probable cause to arrest at the time of incident, the subsequent blood test results confirm Plaintiff may have had diminished capacity to drive at the time of arrest because New Mexico recognizes driving while intoxicated even to the slightest degree.

Plaintiff also asserts that the ADA was violated when Defendant Attencio failed to provide accommodations for his disability during the field sobriety tests. Specifically, Plaintiff claims the walk and turn test and the finger test were not appropriate. Compl. ¶¶ 64-73. As discussed above, the walk and turn test was not necessary for probable cause. Defendant Atencio had more than enough facts from Plaintiff's admitted drinking, appearance, failed preliminary breath test, and other failed tests to support a finding of probable cause. Furthermore, the implication that Plaintiff's missing right thumb was an impediment to successfully performing the dexterity test is a red herring because Plaintiff performed the test with *both* hands not only the alleged deformed hand. (Fact No.12). The results of inquiring into Plaintiff's recent alcohol

consumption, the results of a portable breathalyzer, the smell of alcohol, Plaintiff's bloodshot eyes, Plaintiff's lack of finger dexterity, and the eye gaze tests do not require mobility and are therefore accommodated Plaintiff's disabilities.

The last theory Plaintiff relies on to support his claim that his rights under the ADA were violated is based on the handcuffing of Plaintiff and his detention at the Sheriff's office for four hours. Plaintiff admits that the placement of his handcuffs in the front of his body was an accommodation to him. (Fact No. 18). Moreover, despite having ample opportunity to do so, Plaintiff never asked Defendant Armijo or Atencio for an accommodation for his disability. (Fact Nos. 21, 22). Plaintiff did not ask Defendant Atencio for an accommodation at the arrest scene, on the way to the hospital, at the hospital, on the way to the Sheriff's Office, or at the Sheriff's office. (Fact Nos. 21, 22) Thus, Plaintiff's ADA rights were not violated by the individually named Defendants.

In conclusion, Plaintiff's ADA rights were not violated (1) because he was arrested based on probable cause, (2) the DUI field sobriety test accommodated his disability, and (3) Defendants accommodated his disability when they placed his handcuffs in front and were never made aware of Plaintiff's need for additional accommodations during his arrest and detention. Because Plaintiffs ADA rights were not violated by Defendants Armijo and Atencio, Defendants Armijo and Atencio are entitled to qualified immunity for their actions.

> ii. **Plaintiff's ADA Rights during arrest and detention were not clearly established on August 22, 2013.**

Defendants Armijo and Atencio are immune from suit unless Plaintiff can demonstrate that they violated clearly established law at the time of his arrest on August 22, 2013. A right is not clearly established "unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it." *City & Cnty. of San*

*Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015) (internal citations omitted). Here, Plaintiff can make no such showing. In 2015, the Tenth Circuit still had not decided that accommodations are necessary when disabled individuals are arrested. *J.H. v. Bernalillo*, 806 F.3d 1255, 1260-1261 (10th Cir. 2015) (*citing to Gohier v. Enright*, 186 F.3d 1215, 1221 (10th Cir. 1999)). The United States Supreme Court has yet to weigh in on the issue. *City & Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1773-1774 (2015). Thus, the right to have ADA compliant arrests is not clearly established now and was not clearly established in August of 2013 when Plaintiff was arrested.

Even if *Sheehan*, *Gohier* and *J.H.* stand for the proposition that Defendants Armijo and Atencio should have been aware that their arrest must be ADA compliant, the cases are all distinguishable from the instant case as they all concerned individuals with mentally disabilities. *Sheehan*, 135 S.Ct. 1765, 1769; *Gohier*, 186 F.3d 1216, 1217; *J.H.*, 806 F.3d 1255, 1260. None of these cases offers any guidance as to how to accommodate for Plaintiff's renal failure, diabetes, degenerative joint disease, and missing thumb during a DUI traffic stop and arrest. Perhaps more importantly, *Sheehan* and *J.H.* were decided after Plaintiff's arrest in 2013. Thus, the right of Plaintiff to have reasonable accommodations during a DUI stop and arrest for these specific issues was not clearly established at the time of the incident. Not only was there no ADA violation, but the right was not clearly established at the time of Plaintiff's arrest. Therefore, Defendants Armijo and Atencio should enjoy qualified immunity for their actions and Plaintiff's ADA claims in Count IV, as to the named defendants should be dismissed.

### B. Plaintiff's state tort claims fail because Defendants had probable cause to arrest Plaintiff.

#### i. False Imprisonment and False Arrest

Plaintiff asserts he was falsely imprisoned (Count I) and falsely arrested (Count II). False arrest is merely one way of committing false imprisonment. *Santillo v. N.M. Dep't of Public Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84. Both causes of action will fail if Defendant Atencio had probable cause to arrest Plaintiff. *Id.*

Here, the progression of events, from when Plaintiff first encountered Defendant Armijo until his arrest by Defendant Atencio, supports the probable cause to arrest Plaintiff. Plaintiff first encountered Defendant Armijo at the DUI roadblock. Compl. ¶ 22. Plaintiff retracted the top to his convertible. Compl. ¶ 23. Plaintiff admitted to drinking two beers within the past few hours. Compl. ¶ 24, 25. The results of Plaintiff's preliminary breath test showed Plaintiff's blood alcohol level was greater than .08, Plaintiff failed the eye gaze test, Plaintiff failed the finger dexterity test, Plaintiff had blood-shot watery eyes, and Defendant Atencio smelled alcohol coming from Plaintiff. As argued above, under *State v. Sanchez,* 2001-NMCA-109, Defendant Atencio had probable cause to arrest Plaintiff based on these combined observations. Plaintiff was arrested based upon this probable cause and is therefore not liable to Plaintiff for false imprisonment or false arrest.

#### ii. Malicious Abuse of Process

Plaintiff asserts that Defendant Atencio is liable for malicious abuse of process because he filed charges against Plaintiff "without a reasonable belief Plaintiff committed a crime" and "without lawful cause." Comp. ¶¶ 120, 122. Plaintiff also asserts Defendant Atencio's primary motivation in charging Plaintiff was "to accomplish an illegitimate end." Comp. ¶ 121.

New Mexico has combined the torts of abuse of process and malicious prosecution into a single cause of action known as malicious abuse of process. *Durham v. Guest*, 2009-NMSC-007, ¶ 18, 145 N.M. 694. The tort is narrowly construed. *Id.* ¶ 29. The elements of this cause of action are: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Id.* The first prong can be demonstrated based on two theories. The first theory is lack of probable cause and the second theory is a procedural impropriety theory suggesting "extortion, delay, or harassment" in the form of abusive "discovery, subpoenas" or similar misuse of procedural devices. *Id.*

Here, as discussed above, Defendant Atencio had probable cause to arrest Plaintiff for driving under the influence so Plaintiff's malicious abuse of process claim cannot stand based on probable cause theory. Plaintiff may argue that his malicious abuse of process claim rests on a theory of procedural impropriety, but this too must fail. There is no evidence that Defendant Atencio was attempting to extort Plaintiff. There is also no evidence that Defendant Atencio was attempting to delay any judicial proceeding.

Moreover, whether the administrative hearing is a judicial proceeding for purposes of proving malicious abuse of process is unclear under the law of New Mexico. *See Durham v. Guest*, 2009-NMSC-007, ¶ 34, 145 N.M. 694 (holding that arbitration hearings are judicial proceedings for purposes of malicious abuse of process claims); *but see State Taxation & Revenue Dep't, Motor Vehicle Div. v. Bargas*, 2000-NMCA-103, ¶ 10 (revocation hearings are limited to specific issues) (citing to NMSA § 66-8-112(E)); *Dente v. State Taxation & Revenue Dep't*, 1997-NMCA-099, ¶ 7, 124 N.M. 93 (holding there is no constitutional right to pre-hearing depositions in a license revocation hearing).

But, assuming for the sake argument that Defendants' participation in Plaintiff's revocation hearing is a judicial proceeding for the purpose of proving a malicious abuse of process, here, again, there is no evidence impropriety. Plaintiff's revocation hearing was timely and conformed with the rules. Plaintiff was timely given notice of license revocation pursuant to the Implied Consent Act, NMSA § 66-8-111.1. The hearing was timely held within ninety-days of the notice on November 5, 2013. The hearing date was triggered by statute and at the time of the hearing the results of the state blood test were not available as they were not mailed until November 25, 2013. Plaintiff may claim that Defendant Atencio "objected to" the presence of Plaintiff's wife at the revocation hearing and this is somehow evidence of harassment. Compl. ¶ 101. But making an objection is not a procedural shenanigan, it is simply voicing concern about a possible rule violation. Defendant Atencio's alleged objection was made in open court and the hearing officer could hear from all parties before ruling. And, ultimately, Defendant's objection was overruled as a matter of course by the hearing officer. An objection such as this cannot be construed as harassing or abusive behavior. Therefore, Plaintiff has not stated a claim of malicious abuse of process under either a probable cause or improper procedure theory.

Plaintiff's false imprisonment and false arrest claims fail because Defendant Armijo had probable cause to arrest Plaintiff. The malicious abuse of process claim also fails because Defendant Atencio had probable cause to arrest Plaintiff and because there is no evidence of procedural impropriety. Counts I, II, and III should be dismissed for failure to state a claim.

### C. Plaintiff's remaining ADA claims against Rio Arriba County fail because he never asked for any accommodation.

Plaintiff claims that Title II of the ADA was violated by Defendant Rio Arriba County. (Count IV). The ADA provides that no "qualified individual with a disability shall by reason of

such disability, be excluded from participation in or be denied the benefits if the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12131(1)(B). This provision of the ADA applies to detention in a county jail. *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007). But, before a public entity can be found to have violated the ADA, the public entity must have knowledge of the individual's disability and need for accommodation. *Id.* at 1196.

Here, there is no evidence to support Plaintiff's claim that Rio Arriba County Sheriff's office had any knowledge of Plaintiff's need for accommodation. Plaintiff states he had communications with several employees from the Rio Arriba County Sheriff's office yet he never once communicated a need for special accommodations due to his disability. Plaintiff said that after he was handcuffed, he spoke to several officers to arrange to have his friend take his car. Ex. C, Trujillo Dep., 54:2-5. Plaintiff said he did not have any other communications with officers at the scene of the DUI stop. *Id.* at 55:11-13. Plaintiff said he did not have any conversations with Defendant Atencio from the traffic stop to the Espanola Hospital. *Id.* at 56:3-5. Plaintiff did not ask for any accommodations at the hospital. *See Id.* at 56:9-57:22. Plaintiff did not have any discussions with Atencio from the Hospital to the Sheriff's department. *Id.* at 60:11-13. When his handcuffs were removed to sign a document, Plaintiff did not ask for any accommodations for his handcuffing before he was handcuffed again. Plaintiff did not ask the transport driver for any accommodations. *Id.* at 61:12-14. Plaintiff did not ask the female officer who visited him in his cell for an accommodation. *Id.* at 62:5-17. Plaintiff relies on his disability placard as evidence that he should have been offered accommodations, yet he never asked for any accommodations. Indeed, the officers handcuffed Plaintiff in the front as a courtesy and for Plaintiff's comfort, despite the fact that Plaintiff never requested it or complained. Therefore,

18

Plaintiff's ADA rights were not violated when he was handcuffed and detained and the ADA claims against Rio Arriba County fail as a matter of law.

V.     CONCLUSION

Defendant Atencio arrested Plaintiff on suspicion of DUI based on Plaintiff's admission that he had been drinking, Plaintiff's failure of the field sobriety tests (preliminary breath test, eye gaze test, and finger dexterity test), as well as the Defendant Atencio's observations of Plaintiff (the smell of alcohol and bloodshot, watery eyes). According to Plaintiff's own expert, the eye gaze test, alone, is over 77% accurate at detecting if a driver is driving while impaired. Based on all of these factors, Defendant Atencio had probable cause to arrest Plaintiff which precludes any reasonable jury from finding Defendant Atencio falsely arrested or imprisoned Plaintiff. Likewise, Defendant Atencio did not undertake nor fail to undertake any actions which would make him liable for malicious abuse of process.

Defendants Armijo and Atencio did not violate Plaintiff's ADA rights. Moreover, the right to a specific accommodation for Plaintiff's kidney failure, diabetes, and degenerative joint disease during a DUI stop were not clearly established at the time of Plaintiff's arrest on August 22, 2013. In fact, the role of the ADA in all arrests is still not clearly established law according to the Supreme Court's holding in *City & Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1773-1774 (2015). Therefore, Defendants Armijo and Atencio are entitled to qualified immunity for the ADA claims as there was no clearly established statutory right violated.

Finally, Plaintiff's disabilities were accommodated by the administration of the eye gaze test, the finger dexterity test, the portable breath test, front facing handcuffs, and taking him to the Sheriff's office rather than the detention facility. Plaintiff's missing thumb was accommodated by having him perform the dexterity test on both hands. At no time did Plaintiff

ask for any other accommodations for his disability and so Defendant Rio Arriba County did not, at any time, violate Plaintiff's ADA rights under Title II.

**WHEREFORE**, Defendants respectfully request this Court grant summary judgment in their favor upon all claims against them in Plaintiffs' Complaint, award them their costs in the action, and for other further relief which this Court deems just and proper.

Respectfully submitted,

BRENNAN & SULLIVAN, P.A.

By: */s/ Sabrina R. Salvato*
Sabrina Rodriguez Salvato
James P. Sullivan
128 East DeVargas
Santa Fe, New Mexico 87501
(505) 995-8514
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of June, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joseph P. Kennedy, Esq.
Theresa V. Hacsi, Esq.
KENNEDY, KENNEDY & IVES, LLC
1000 Second Street, NW
Albuquerque, NM 87102
(505) 244-1400
(505) 244-1406 FAX
jpk@civilrightslawnewmexico.com
tvh@civilrightslawnewmexico.com
*Attorneys for Plaintiff*

By: */s/ Sabrina R. Salvato*
Sabrina Rodriguez Salvato