IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN TRUJILLO,

      Plaintiff,

vs.                                 No. 15-CV-00901 JB-WPL

**RIO ARRIBA COUNTY ex rel,
RIO ARRIBA COUNTY SHERIFF'S
DEPARTMENT and DEPUTY GILBERT ATENCIO,**
in his individual capacity.

      Defendants.

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR QUALIFIED IMMUNITY AND SUMMARY JUDGMENT

COMES NOW, Plaintiff, John Trujillo, by and through his attorneys, Kennedy Kennedy & Ives, and hereby requests this Court deny Defendants' Motion for Qualified Immunity and Summary Judgment because, taking the facts in the light most favorable to the non-moving party, a reasonable jury could find Defendant Rio Arriba County violated John Trujillo's rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (ADA), and the New Mexico Tort Claims Act. In the alternative, if the Court grants summary judgment on Trujillo's claim brought pursuant to the Title II of the ADA, Trujillo requests that the District Court remand his state tort claims.

John Trujillo raises a claim under Title II of the Americans with Disabilities Act. Trujillo contends that Atencio improperly used observations of his disability to determine probable cause for a DWI arrest. Trujillo's claim is simple - the observations Atencio made of Trujillo stumbling to get out of his car and leaning on his car revealed that John Trujillo was disabled, not that he was impaired. When Atencio's observations of Trujillo's disability are stripped away, a reasonable jury could find that Atencio had no probable cause to arrest Trujillo.

## FACTUAL BACKGROUND

John Trujillo, born in Clayton, New Mexico, is a veteran of the war in Vietnam. Trujillo entered the army in December, 1966, attended officer training school, and served as a lieutenant in the war. Trujillo suffers from injuries and illnesses as a direct result of his service in Vietnam. Trujillo has diabetes and neuropathy as a result of being exposed to Agent Orange, has severe knee issues and degenerative arthritis as a result of over 250 air assault insertions from helicopters, has degenerative heart disease and a blocked valve to his heart, and has shrapnel throughout his body. Trujillo believes that the shrapnel caused a staph infection in his thumb, resulting in the loss of his thumb on his right hand. (See Transcript of Deposition of John Trujillo, attached hereto in relevant part, as **Exhibit 1**, at p. 8: 4-23; p. 9: 9-10; p. 17: 11-16; p. 24: 15-25; p. 25: 1-3, 11-25; p. 26: 1-3, 15-24). The Veterans' Administration has determined that John Trujillo is 100% disabled. Trujillo is prescribed Diazepam for anxiety. (See Plaintiff John Trujillo's Medical Records listing his Active Outpatient Medication, attached hereto in relevant part, as **Exhibit 2**).

On August 22, 2013, Trujillo was returning home to Angel Fire from an appointment at the VA in Albuquerque. (**Exhibit 1** p. 30: 21-25). Trujillo ate dinner at El Paragua Restaurant in Espanola, New Mexico, and drank two 12-ounce beers with dinner. **Exhibit 1,** p. 31: 23-25, p. 36: 5-7**.** After leaving El Paragua, Trujillo came upon a Rio Arriba County roadblock on Highway 84. **Exhibit 1,** p. 37: 14-17. When asked whether he had anything to drink, Trujillo admitted to having had something to drink. **Id.** at p. 43: 15-19. Trujillo was directed to a secondary area. Atencio watched Trujillo drive to the secondary area and did not notice any impaired driving. (See Transcript of Deposition of Gilbert Atencio, as **Exhibit 3**, p. 58: 7-25, p. 59: 1-7.

Trujillo's habit is to carry breath mints because his diabetes causes an offensive odor, and

out of courtesy to other people, Trujillo consumes mints so as to not offend. **Exhibit 1,** p. 38: 19-25; p. 39: 1-4.  Trujillo placed a breath mint in his mouth when approaching the checkpoint so as to not cause offense to anyone due to the odor in his mouth caused by diabetes.  **Exhibit 1**, p. 39: 20-25; p. 40: 1-20).  Upon Trujillo pulling onto the side of the road and Atencio requesting him to exit his vehicle, Trujillo asked Atencio if he could retrieve his cane and Atencio said, "No, you don't need it." **Exhibit 1**, p. 46: 4-10.  When Atencio asked Plaintiff Trujillo to step away from his vehicle, Trujillo anticipated the field sobriety tests and told Atencio, "Officer, I won't be able to perform the field sobriety test for you because I don't have that degree of balance because of my impairment." **Exhibit 1**, p. 48: 14-22.  Atencio ignored Trujillo, told him to perform a preliminary walk, and then decided that Trujillo could walk well enough.  **Exhibit 1**, p. 48: 23-25; p. 49: 1).  Atencio requested Trujillo perform the finger dexterity test, Trujillo recalls that Atencio criticized him for not having a right thumb as he could not touch his fingers to his thumb on the right hand. **Exhibit 1**, p. 49: 5-8.  On his left hand, Trujillo performed the finger dexterity test successfully and in the order requested by Atencio**. Exhibit 1,** p. 50: 1-22.  Atencio requested Trujillo perform the walk and turn, with one foot in front of the other in a heal-to-toe manner. **Exhibit 1**, p. 51: 16-18.  Trujillo knew he could not perform this task, without his cane, due to his diagnosis of neuropathy. **Exhibit 1**, p. 51: 19-20.  Atencio terminated that test for Plaintiff's safety. **Exhibit 1**, p. 51: 20-22. Trujillo attempted to reiterate that he is disabled and that "there is a handicap sticker right there on the dash of [Plaintiff's] car." **Exhibit 1**, p. 53: 16-19.  He told Atencio multiple times of his disability and his ability to show proof. **Exhibit 1**, p. 53: 20-23.  After terminating the heel-to-toe test, Atencio immediately cuffed Trujillo.  **Exhibit 1,** p. 51: 23-25, p. 52: p. 1-6**.** Atencio kept Trujillo cuffed the entire time during the transport, during his time at the hospital, and during his time in a cell. **Exhibit 1**, p. 57: 15-25).  The only time they allowed his cuffs to be off, briefly, was when Defendant

3

Atencio tried to get Plaintiff Trujillo to sign a document that he did not know what it was nor was he able to read it without his glasses, and was subsequently ridiculed. **Exhibit 1**, p. 59: 22-25; p. 60: 1-25; p. 61: 1-3.

Atencio acknowledges that he never received training on identifying or accommodating disabilities during DWI investigations. **Exhibit 3**, at p. 29: 5-8.  During Defendant Atencio's time as a deputy at the Rio Arriba County Sheriff's Department, the policy book that he received never had a standard operating procedure instructing on the Americans with Disabilities Act and how to use or implement it when making arrests. **Exhibit 3**, at p. 29: 25; p. 30: 1-6.  In addition to having nothing in the standard operating procedures related to the Americans with Disabilities Act under the Sherriff's policy book, there was nothing in the Rio Arriba County's policy book on standard operating procedures instructing on the Americans with Disabilities Act and the New Mexico Human Rights Act. **Exhibit 3**, at p. 31: 1-9.  Over the course of Atencio's law enforcement career, he believes that every DWI stop investigation resulted in every person alleging some kind of disability. However, Atencio never received training on how to tell whether a person is truly disabled or whether a person is using the allegation or excuse of disability to try to get out of a DWI. **Exhibit 3**, at p. 31: 15-25; p. 32: 1-14.  Atencio instructs individuals to perform a preliminary walk to determine if he believes that they are capable of performing the field sobriety tests using his own human experience to instruct an individual alleging a disability to walk a determined distance, hat he established, so he can evaluate the veracity of their allegation. **Exhibit 3**, at p. 33: 4-25; p. 34: 1-25.  Atencio has no training in the efficacy of his personal test for disabilities.  Id. An officer cannot predict the manifestation of a disability on a field sobriety test, especially when the "walk and turn" test is standardized on people that are not injured, not old, and not overweight. (See Transcript of Deposition of Murray Conrad, attached hereto in relevant part, as **Exhibit 4**, at p. 48: 22-25; p. 49: 1-13).

The immediate factors that Atencio saw upon Plaintiff exiting the vehicle was that he is an older man weighing 240 pounds, and that these factors need to be considered before administering field sobriety tests, which a lot exist that can be administered to somebody who is older and overweight. **Exhibit 4**, at p. 35: 17-25; p. 36: 1-17. Atencio claims that he told Plaintiff that he would run him through standardized field sobriety tests, which Plaintiff responded telling Defendant Atencio that he would not be able to stand on one leg. **Exhibit 3**, at p. 68: 14-17. Atencio testified that he never asked Plaintiff Trujillo why he would not be able to stand on one leg and did not provide the opportunity for Plaintiff Trujillo to explain. **Exhibit 3**, at p. 68: 19-24. Atencio requested that Trujillo perform a preliminary walking test, after Trujillo explained that he had a bad knee, and made his own determination that Trujillo could perform the walk and turn test, an opinion established by his own human experience without medical training or ADA training. **Exhibit 3**, at p. 29: 5-8; p. 33: 4-25; p. 34: 1-25; p. 77: 10-17. Atencio stated that Trujillo performed the preliminary walking test well enough, in his opinion, to be able to perform the walk and turn field sobriety test. **Exhibit 3**, at p. 77: 17-25; p. 78: 1-2.

Atencio is not trained in what substances cause nystagmus. His training is limited to performing the nystagmus test, to look for smooth pursuit, and see if he can detect a nystagmus. **Exhibit 3**, at p. 42: 19-25: p. 43: 1-7. Atencio was not trained to determine the range of different things that could affect the human body that may or may not cause nystagmus. Atencio believes that coffee and sugar can cause nystagmus. **Exhibit 3**, at p. 41: 17:25; p.42: 1-18; p. 43: 8-11. Atencio is not a Drug Recognition Expert. **Exhibit 3**, at p. 48: 9-11. Atencio informed Trujillo that he was under arrest for driving under the influence of alcohol or drugs, and at the time of the arrest, Atencio placed him under arrest for being under the influence of alcohol, only. **Exhibit 3**, at p. 76: 7-12. Atencio does not remember administering a portable breath test and does not recall any results of the portable breath test. **Exhibit 3**, at p. 78: 12-25. Atencio acknowledged

5

that Trujillo did very well on an alphabet test. **Exhibit 3**, p. 75: 23-25, p. 76: 1. Atencio formed probable cause and made an arrest with the following manifestations of Plaintiff's disability and weight: admission to drinking, sweating profusely, flushed face, hanging on to his door, hanging on the car as he walked to the back, having difficulty standing on his own without holding on the trunk lid, six cues observed in the horizontal and vertical gaze nystagmus, and him having difficulty in the instructional stance using his arms for balance. **Exhibit 3**, at p. 80: 21-25; p. 81, 1-7.

Atencio did not take Trujillo to the Sheriff's Department to conduct a breath test and it was not until Plaintiff Trujillo requested an independent test at a medical facility that Defendant Atencio decide to conduct a blood draw for his advisory implied consent. **Exhibit 3**, at p. 82: 11-25; 83: 1-18.  Atencio failed to conduct a breathalyzer test knowing the results would have been immediate rather than allowing months to pass before the results of the blood draw. **Exhibit 3**, at p. 83: 5-18.  Trujillo requested a breathalyzer as well as an independent test, however, Defendant Atencio did not conduct a breathalyzer and decided that the request for an independent test would force them to get medical clearance, so a blood draw at the hospital was more convenient for Atencio. **Exhibit 3**, at p. 86: 3-20.  Atencio knew that the results of a breath test are more immediate than the results of a blood test and that the breath tests are admissible in court. **Exhibit 3**, at p. 86: 21-25; p. 87: 1-7.  Atencio never asked Trujillo if he had ingested any narcotics or prescription pills because he never suspected Plaintiff Trujillo to be under the influence of anything other than alcohol. **Exhibit 3**, at p. 87: 3-8, 14-23. When shown the toxicology report at his deposition, Atencio noticed that the diazepam was present at less than .10 milligrams in his system but Defendant Atencio has no understanding of how much that actually is, how that amount it measured, what the lowest amount present would be, or really anything other than .10 milligrams of diazepam was present. **Exhibit 3**, at p. 94: 11-16, 24-25; p.

6

95: 1-25; p. 96: 1-8.  Atencio cannot read toxicology reports. Id.

## RESPONSE TO DEFENDANTS' UNDISPUTED MATERIAL FACTS

1. Plaintiff disputes the alleged facts in ¶¶ 1 and 2 as immaterial to any probable cause determination. Atencio had no information about diazepam when he arrested Trujillo. After the fact discovered evidence can never be used to justify an unlawful arrest. Maryland v. Garrison, 480 U.S. 79, 85(1987). Atencio admitted in his deposition that he did not suspect prescription drug use and he asked no questions about prescription drug use. Indeed, Atencio had no knowledge of what the toxicology report revealed even after reading it. Trujillo also disputes the reliability or the admissibility of the toxicology report. Defendants have offered no foundation for its consideration. **Exhibit 3**, at p. 87: 3-7, 14-23; p. 94: 11-25; p. 95: 1-25; p. 96: 1-8.

2. Plaintiff disputes Defendants' fact at ¶ 3. Defendants cannot use expert opinions to support their position when the expert lacks expertise in the area.  Murray Conrad does not have the background to opine about the effects of Diazapam. "'[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" Hernandez v. City of Albuquerque, No. CIV 02-0333 JB/RHS, 2003 WL 24130245, at *3 (D.N.M. Dec. 24, 2003) (quoting General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997)).  Rather, that expert's opinion must be reliably related to his experience.  Id. "The reliability analysis applies to all aspects of the expert's testimony, including the facts underlying the opinion, the methodology, and the link between the facts and the conclusion drawn." Id., at *3. In Hernandez v. City of Albuquerque, No. CIV 02-0333 JB/RHS, 2003 WL 24130245, at *3 (D.N.M. Dec. 24, 2003), the defendant relied on a police procedures expert to rebut

the plaintiff's motion for summary judgement. Specifically, the defendant offered testimony from the police procedures expert regarding whether the plaintiff's injuries were caused by a police asp. Id. Relying on the reliability standards in Daubert, the Court excluded opinions that were premised on medical opinions. The Court found that the police procedures expert was not qualified to testify to medical opinions because the police procedures expert lacked medical training. Specifically the court found that:

> Ferrera may have specialized knowledge and/or experience in subduing and disarming a suspect, as well as in self-defense procedures. He lacks, however, the specialized knowledge to determine a fact in issue by means of medical testimony. Ferrera is not qualified as an expert in human anatomy or physiology. Thus, he does not have the knowledge, skill, training, or education to offer opinion testimony concerning the function of the PNS or SNS. Ferrera is not an expert in the area of medical principles, and consequently the Court will not consider his opinions when deciding the Plaintiff's Amended Motion for Summary Judgment.

Id., at *4.

Here, Commander Conrad is a police procedures expert and Plaintiff will rely upon his expertise regarding field sobriety testing. However, Commander Conrad is not a medical doctor and his testimony regarding the impact of diazepam on a driver is inadmissible.

The Court in Hernandez also prohibited using Ferrera for medical testimony because he "does not explain or mention what medical standards he relies upon to support his opinion[,]" but rather based his opinion on "police department training instead of medical training." Id., at *4. As a result, the Court found that Ferrera's medical testimony failed the Daubert test because it:

> [did] not show how his experience is reliably applied to the facts of this case. If the witness is relying solely or primarily on experience,

8

> then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis of the opinion, and how that experience is reliably applied to the facts.

Id., at *4.

Similarly, Commander Conrad bases his opinion regarding the impact of Diazepam from his training as a police officer, but not on medical training or training as a toxicologist. Defendants do not offer an explanation for how Commander Conrad's statement that diazepam can impair a driver has any relation to his opinions based on police procedures. There is no reliable connection between the police training regarding the impact of diazepam and police training. Simply because Trujillo proffers Commander Conrad as an expert in alternative field sobriety tests does not mean he has to suffer admission of any opinion offered in a report or extracted at deposition.

3. Plaintiff does not dispute Defendants' fact at ¶ 4.

4. Plaintiff does not dispute Defendants' fact at ¶ 5.

5. Plaintiff does not dispute Defendants' fact at ¶ 6.

6. Plaintiff does not dispute Defendants' fact at ¶ 7.

7. Plaintiff disputes Defendants' fact at ¶ 8. Defendant Atencio testified that he did not remember completing a PBT (Preliminary Breath Test). Trujillo alleged in his complaint that Atencio falsely accused Trujillo of having a breath alcohol content of 0.12. Trujillo alleged that Defendant Atencio lied about the results. Obviously, given the allegation that Defendant Atencio lied about any PBT and the testimony that Defendant Atencio did not remember any PBT testing, Defendants' allegation that Plaintiff Trujillo's breath alcohol content was over 0.08 finds no support in the record. **Exhibit 3**, at p. 78: 12-25.

8. Plaintiff disputes Defendants' fact at ¶ 9. Murray Conrad never testified that Plaintiff

9

   Trujillo failed the horizontal gaze nystagmus test, instead, he agreed that Defendant Atencio claimed that Trujillo had all six indicators on the nystagmus. **Exhibit 4,** at p. 40: 17-19; 42: 17-25; p. 46: 1-6.

9. Plaintiff disputes Defendants' fact at ¶ 10. See, Plaintiff's response Defendant's asserted undisputed fact, No. 3.  The court should not consider Defendants' assertion that Plaintiff failed the nystagmus test (herein after "HGN") because Defendant has failed to establish the reliability of HGN testing as required by Daubert. "HGN testing is a scientific process, and that a scientific foundation must be laid in order for the results of such testing to be admitted." State v. Aleman, 2008-NMCA-137, 145 N.M. 79, 84, 194 P.3d 110, 115. Defendant has not established that the HGN is a credible test which can be admitted pursuant to Fed. R. Civ. 702.  No individual has testified regarding the scientific principles of the HGN test and testimony regarding law enforcement's frequent use of the HGN test is insufficient.  See State v. Torres, 1999-NMSC-010, 127 N.M. 20, 33, 976 P.2d 20, 33 (finding,  "although his testimony supported an inference that various authorities believe HGN testing to be scientifically valid, his testimony did not provide the trier of fact with a ground on which to evaluate the basis of that belief.").  "[I]n order for the results of such scientific tests to be admissible, it is necessary for the State to establish the foundation for the individual scientific tests." State v. Aleman, 2008-NMCA-137, 145 N.M. 79, 84, 194 P.3d 110, 115. Defendant must also show "that HGN test results correlate with impaired driving skills." Id., at 115. Defendant has laid no such scientific foundation and cannot properly rely on Plaintiff's alleged failure of the HGN test in their Motion for Summary Judgement as a basis to believe that Mr. Trujillo was impaired while driving.
Not only have Defendants filed to scientifically justify the reliability of the HGN test, Defendants have failed to qualify Defendant Atencio as a non-scientific expert in

10

administering the highly technical test. "[N]on-scientific experts may testify, provided that another, scientific expert first establishes the evidentiary reliability of the scientific principles underlying the test." Id., at 120. (quotation omitted). "[E]xperts who lack the qualifications necessary to testify about scientific knowledge may, because of their training, experience, and specialized knowledge, testify as to the *administration* and *specific results* of the test after it has been shown to meet the requirement of evidentiary reliability." Id., at 120 (quotation omitted) (emphasis original).

> [I]n order to establish the "technical or specialized knowledge" required to qualify a witness as an expert in the administration of the HGN test, there must be a showing: (1) that the expert has the ability and training to administer the HGN test properly, and (2) that the expert did, in fact, administer the HGN test properly at the time and upon the person in question.

State v. Torres, 1999-NMSC-010, 127 N.M. 20, 35, 976 P.2d 20, 35. Here Defendant has made no effort to qualify Defendant Atencio as an expert to testify that he had the ability and training to administer the HGN test properly and that Mr. Trujillo failed. Without an expert certifying Defendant Atencio's actions, Defendants reliance on the nystagmus test must be excluded pursuant to Fed. R. Civ. 702.

10. Plaintiff does not dispute Defendants' fact at ¶ 11.

11. Plaintiff does not dispute Defendants' fact at ¶ 12.

12. Plaintiff disputes Defendants' fact at ¶ 13. Plaintiff was able to perform the finger dexterity task successfully. In regards to performing in his right hand, it was near impossible due to Plaintiff not having a right thumb. However, Plaintiff completed the task in the correct order as advised by Defendant Atencio. **Exhibit 1**, at p. 50: 1-22.

13. Plaintiff disputes Defendants' fact at ¶ 14. Atencio appears to have created these facts, after he made a decision to arrest. Plaintiff's speech was not slurred, **Exhibit 1**, p. 67: 12-20,

his eyes were not blood shot or watery and he regularly takes mints into his mouth to cover his bad breath from his diabetes. Atencio made no mention of bloodshot watery eyes, slurred speech, or that anyone even smelled alcohol until the very end of his interaction with Trujillo. (*See* Transcript of Deposition of Murray Conrad, attached hereto in relevant part, as **Exhibit 4**, at p. 26: 3-8).

14. Plaintiff does not dispute Defendants' fact at ¶ 15.

15. Plaintiff disputes Defendants' fact at ¶ 16. The arrest was for driving under the influence of intoxicating liquor or drugs. The common name of the statute is "Driving Under the Influence of Intoxicating Liqour or Drugs." NMSA § 66-8-102.

16. Plaintiff does not dispute Defendants' fact at ¶ 17.

17. Plaintiff does not dispute Defendants' fact at ¶ 18.

18. Plaintiff does not dispute Defendants' fact at ¶ 19.

19. Plaintiff does not dispute Defendants' fact at ¶ 20.

20. Plaintiff does not disputes Defendants' fact at ¶ 21.

21. Plaintiff does not disputes Defendants' fact at ¶ 22.

22. Plaintiff does not dispute Defendants' fact at ¶ 23.

23. Plaintiff does not dispute Defendants' fact at ¶ 24.

24. Plaintiff disputes Defendants' fact at ¶ 25. The "Findings by the Preponderance" noted that there was insufficient evidence to establish whether the chemical test was administered to Plaintiff pursuant to the provision of the Implied Consent Act and the requirements could not be established. The revocation was rescinded.

25. Plaintiff does not dispute Defendants' fact at ¶ 26.

26. Plaintiff disputes Defendants' fact at ¶ 27. Plaintiff Trujillo disputes the reliability or the

admissibility of the toxicology report. Defendants have offered no foundation for its consideration.

27. Plaintiff does not dispute Defendants' fact at ¶ 28.

28. Plaintiff disputes Defendants' fact at ¶ 29. Atencio filed the complaint.

## SUMMARY JUDGMENT STANDARD

The general rule for summary judgment is that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M.LR-CIV. 56.1(b). However, in addition to disputing a fact's truthfulness or materiality, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "Where different ultimate inferences may properly be drawn, the case is not one for summary judgment." Webb v. Allstate Life Ins. Co., 536 F.2d 336, 339 (10th Cir. 1976).

In determining whether to grant summary judgment, a court must view the evidence "in the light most favorable to the opposing party." Tolan v. Cotton, U.S., 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014).

Specifically, the moving party must support its alleged facts with admissible evidence. Fed.R.Civ.Proc.56(c)(2). The toxicology report is inadmissible for two reasons. First, Defendants have laid no foundation for its reliability or authenticity and have no evidence as to any interpretation of the results and what, if anything, the Diazapam means. Second, no part of Atencio's decision arrest Trujillo was based upon the toxicology report. Therefore, the toxicology report is hearsay and immaterial.

**ARGUMENT**

I. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED DUE TO DEFENDANT RIO ARRIBA COUNTY'S VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE AMERICANS WITH DISABILITIES ACT**

Defendant Atencio improperly used evidence of Trujillo's disability to provide probable cause. When the evidence of disability is removed, a reasonable jury could find that Atencio had insufficient probable cause. Title II of the ADA provides:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

In Gohier v. Enright, 186 F.3d 1216, 1219 (10th Cir.1999), the Tenth Circuit assumed without deciding that the ADA applies to arrests. As this Court wrote in J.H. ex rel. J.P. v. Bernalillo Cty., No. CIV 12-0128 JB/LAM, 2014 WL 3421037, at *75 (D.N.M. July 8, 2014), aff'd, 806 F.3d 1255 (10th Cir. 2015), the Fourth Circuit approved of the Tenth Circuit's proposition that "plaintiffs may bring under Title II in the arrest context." Id., citing, Waller ex rel Estate of Hunt v. Danville, 556 F.3d 171, 174 (4th Cir.2009). This Court further wrote that one theory of violation of Title II is the wrongful arrest theory, which posits that an entity is liable when "police arrest a suspect based on his disability, not for any criminal activity." Id. As this Court wrote:

> The essence of [the wrongful arrest] theory is that the police mistake legal conduct caused by the disability as illegal conduct." Glover v. City of Wilmington, 966 F.Supp.2d 417, 428–29 (D.Del.2013)(Andrews, J.). Under this theory, a plaintiff must establish three elements: (i) the plaintiff was disabled; (ii) the arresting officers knew or should have known that the plaintiff was disabled; and (iii) the defendant arrested the plaintiff because of legal conduct related to the plaintiff's disability. *See, e.g.,* Lewis v. Truitt, 960 F.Supp. 175, 178 (S.D.Ind.1997)(Godich, M.J.)("Courts have held that a plaintiff may recover under the ADA where he can show that (1) he was disabled, (2) the defendants knew or should have known he was disabled, and (3) the defendants arrested him because of legal conduct related to his disability.").

J.H. ex rel. J.P. v. Bernalillo Cty., No. CIV 12-0128 JB/LAM, 2014 WL 3421037, at *75 (D.N.M. July 8, 2014), aff'd, 806 F.3d 1255 (10th Cir. 2015)

The Ninth Circuit has also cited Gohier for the proposition that arrests are "programs" or "activities" of a local government. Lum v. Cty. of San Joaquin, 756 F. Supp. 2d 1243, 1252–53 (E.D. Cal. 2010); citing, McGary v. City of Portland, 386 F.3d 1259, 1268 (9th Cir.2004). The Ninth Circuit has also cited with approval the Tenth Circuit's holding that the ADA applies to arrests. Id. Thompson v. Davis, 295 F.3d 890, at 897 (9th Cir.2002); citing Gohier, 186 F.3d at 1221 ("[A] broad rule categorically excluding arrests from the scope of Title II ... is not the law."). The Ninth Circuit has noted that "under the ADA regulations, law enforcement is obligated to modify 'policies that result in discriminatory arrests *or abuse of individuals with disabilities.*'" Lum v. Cty. of San Joaquin, 756 F. Supp. 2d 1243, 1252–53 (E.D. Cal. 2010), citing, Thompson v. Davis, 295 F.3d at 897.

Atencio was set-up at a checkpoint and Plaintiff's vehicle was under control and Plaintiff was compliant in all of the officer's requests. Similar to Glover v. City of Wilmington, 966 F.Supp.2d. 417 (D. Del. 2013), at no point did Plaintiff pose a threat or harm to the officer's safety or the safety of others. There were no exigent circumstances to disregard Plaintiff's visible disability. Atencio used Trujillo's disabilities to improperly make a determination of impairment.

Plaintiff repeatedly told Atencio he was disabled. In addition, upon Defendant Atencio approaching Plaintiff's vehicle, a handicapped placard sign was visibly placed on the rear view mirror, in plain sight of an officer approaching a vehicle. Trujillo asked to use his cane. In the light most favorable to Trujillo, John Trujillo merely admitted to consuming beer, performed well on a finger dexterity test and terminated the heel-to-toe test due to his disability.

Even when viewed in the light most favorable to Atencio, Trujillo's complaint of an improper consideration of his disability is apparent. Defendant Atencio asked Plaintiff to step out

of the car, and upon exiting, Plaintiff manifested his disability by grabbing onto the door for assistance to exit. Plaintiff requested his walking cane multiple times to assist him in standing and maintaining his balance. In addition, Plaintiff offered to produce proof of his disability but Defendant Atencio ignored Plaintiff. Defendant Atencio did not require intuition to know that Plaintiff was disabled, Plaintiff had clear proof of his disability and outwardly manifested it in a recognizable fashion. As in Glover, Defendant Atencio unreasonably determined probable cause and arrested Plaintiff for mistaking his disability with a criminal activity. Glover v. City of Wilmington, 966 F.Supp.2d. 417, ¶ 28. In Garner, there was never a request for accommodation, however, Plaintiff requested accommodation multiple times and informed Defendants of his disabilities multiple times, to no avail. Garner v. City of Ozark, 2015 WL 728680 at *10. Finally, in Glover, the officers did not subject plaintiff to perform field sobriety tests that would have been affected by her disability. Glover v. City of Wilmington, 966 F.Supp.2d. 417, ¶ 28. Rio Arriba County has no training in identification of disabilities and no policies to exclude evidence of disabilities as evidence of impairment.

## II.    ATENCIO IS NOT ENTITLED TO QUALIFIED IMMUNITY

In Butler vs. City of Praire Village, Kan., 772 F. 3d 736, 744 (10th Cir. 1999), the Tenth Circuit established that there are no individual capacity suits under the ADA. See also, Carten v. Kent State Univ., 282 F .3d 391, 396–97 (6th Cir.2002)(holding that a defendant must be held responsible in "his or her official capacity for violating Title II, which by its terms applies only to 'public entit[ies]' "); Garcia v. SUNY Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir.2001)("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir.1999)("[T]he commissioners may not be sued in their individual capacities directly under the

provisions of Title II. Title II provides disabled individuals redress for discrimination by a 'public entity.' ")).

Plaintiff contends that Defendant Rio Arriba County, as a public entity, violated Plaintiff's rights under the ADA. Plaintiff's Compl. ¶¶ 125-137. Plaintiff does not state an ADA claim against Atencio. Plaintiff properly brought a claim against Rio Arriba County under 42 U.S.C. § 12131(1)(B) (1990) and 42 U.S.C. § 12131(2) (1990) noting that Rio Arriba is a public entity. Defendant does not dispute that Trujillo is a qualified individual with a disability. Rio Arriba does not have sovereign immunity for claims arising under the ADA. 42 U.S.C. § 12202 (1990). Plaintiff asserted the violation by the public entity, Rio Arriba County, and noted that it was their inability to train officers to deal with citizens who suffer from disabilities.

### III. THE COURT SHOULD REMAND ANY STATE LAW CLAIMS

In Armijo v. New Mexico, No. CV-08-0036 JB/ACT, 2009 WL 3672828, at 4 (D.N.M. Sept. 30, 2009), this Court acknowledged the Supreme Court's and the Tenth Circuit's preference for remand of state claims when federal claims are dismissed. See also, Bd. of Cty. Commisioners of Sweetwater Cty. v. Geringer, 297 F.3d 1108, 1115 (10th Cir. 2002) When a district court dismisses a claim that provided original federal-question jurisdiction, the Court, pursuant to 28 U.S.C. § 1367(c)(3), the Court should decline to exercise supplemental jurisdiction over the state law claims. Id.

In United Mine Workers of Am. V. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court stated that:

> "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Id.* (footnotes omitted). Cf. Bd. of County Comm'rs v. Geringer, 297 F.3d 1108, 1115 n. 6 (10th Cir.2002)("The district court's ruling [in which it declined to review the state law claims] comports with our general admonishment

> that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial....")."

As this court stated in Armijo, "the New Mexico state courts are more experienced and knowledgeable about the contours of state law. Also, federal courts should strive to avoid deciding issues of state law when, as here, it is possible to do so. The Court also recognizes that Armijo filed this case originally in state court and that it was the DOT who removed this case on the basis of federal-question jurisdiction; returning this case to the state court would return it to the forum that Armijo selected." Armijo v. New Mexico, No. CIV 08-0336 JB/ACT, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009). So too, should the Court dismiss the ADA claims, the Court should remand Trujillo's state law claims.

## IV. PLAINTIFF'S FALSE ARREST AND MALICIOUS PROSECUTION CLAIMS SHOULD BE DECIDED BY A JURY

A false arrest claim consists of a lack of probable cause for arrest. Ulibarri v. Maestas, 74 N.M. 516, 520, 395 P.2d 238, 239-40 (1964) ("A belief on the part of a police officer that he had the right to arrest a person does not excuse him from the consequences of an unlawful arrest where … no offense has actually been committed and the circumstances do not permit or justify a reasonable belief that an offense has been or probably has been committed.") Where an officer violates a person's rights to be free from unlawful arrest and excessive force his conduct in making the arrest and in using force subjects him to liability for the torts of battery and false imprisonment. See Santillo v. N.M. Dept. of Public Safety, 2007-NMCA-159, 143 N.M. 84, 173 P.3d 6; Mead v. O'Connor, 66 N.M. 170, 172-3, 344 P.2d 478, 479-80 (1959).

Atencio cannot assert after discovered evidence to support a finding of probable cause. Maryland v. Garrison, 480 U.S. 79, 85, (1987):

> must judge the constitutionality of [Vigil's] conduct in light of the information available to [him] at the time [he] acted. Those items of evidence that emerge after the

> warrant is issued have no bearing on whether or not a warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate.

Id. see also, State v. Vasquez, 1991-NMCA-072, 112 N.M. 363, 367, 815 P.2d 659, 663 ("it is essential that the officer have probable cause before seizing the evidence.") Atencio claims that Trujillo admitted to drinking two beers. Trujillo does not dispute that fact. Every other allegation of impairment is disputed or is evidence of a disability. Trujillo disputes slurred speech. Trujillo disputes failing a finger dexterity test. Trujillo performed well on an alphabet recitation test. Trujillo drove his car without incident into the secondary area. Atencio gave two alternative tests to determine impairment. On one test Atencio admits Trujillo did well. On the other test, Trujillo disputes Atencio's claims. Thus, from the record, a reasonable jury could determine Atencio lacked probable cause.

The obvious distinguishing facts from State v. Sanchez, 2001-NMCA-109, is that Sanchez refused to complete field sobriety tests. The police officer and the Court accepted Sanchez's refusal as consciousness of guilt. In Sanchez, the officer testified, on similar facts, that he had only reasonable suspicion before Sanchez refused field sobriety tests. Here, Trujillo could not perform standard tests due to his disability. On the alternative tests, Trujillo performed well on one and there is a dispute about how well he did on another test. Far from acknowledging guilt by refusing, Trujillo did well on both tests, or so a jury could find.

## CONCLUSION

WHEREFORE, Plaintiff requests the Court deny Defendants' Motion for Qualified Immunity and Summary Judgment because taking the facts in the light most favorable to the non-moving party, as reasonable jury could find Defendants, Rio Arriba County, violated John

19

Trujillo's rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (ADA), and the New Mexico Tort Claims Act. In the alternative, if the Court grants summary judgment on Trujillo's claim brought pursuant to the Title II of the ADA, Trujillo requests that the District Court remand his state tort claims.

Respectfully Submitted:

**KENNEDY KENNEDY & IVES**

*/s/ Joseph P .Kennedy*
Joseph P. Kennedy
Theresa V. Hacsi
*Attorneys for Plaintiff*
1000 2nd Street NW
Albuquerque, NM 87102
(505) 244-1400   Fax (505) 244-1406

I hereby certify that a true and correct copy of the foregoing was delivered via the CM/ECF filing system on the day of its filing to all counsel of record.

*/s/ Joseph P. Kennedy*
Joseph P. Kennedy